1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

RABEE AL-MIRZAH,                                         NO.  C14-193-RSL-JPD

9
                                    Plaintiff,

10           v.
                                                        REPORT AND
11                                                      RECOMMENDATION
     CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

12
                                    Defendant.
13

14          Plaintiff Rabee Al-Mirzah appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied his applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be reversed and remanded for further administrative proceedings.

20                      I.        FACTS AND PROCEDURAL HISTORY

21          At the time of the first administrative hearing, plaintiff was a 39 year old man with a

22   high school education in his native Iraq.  Administrative Record ("AR") at 73, 1007.  His past

23   work experience includes employment as a photo printer and a saw operator.  AR at 96-103,

24   632, 1008-13, 1027-28.  Plaintiff was last gainfully employed as a photo printer in 2001.  AR

REPORT AND RECOMMENDATION - 1

at 72, 96, 619.  After that, plaintiff worked for brief periods as a translator and cultural trainer for the United States Army and as a Town Car driver.  AR at 72, 1011-13.

On October 7, 2005, plaintiff filed a claim for SSI payments.  On October 12, 2005, he filed an application for DIB, alleging an onset date of November 18, 2001.  AR at 73-79.  Plaintiff asserts that he is disabled due to a head injury, back pain, sleep apnea, irritable bowel syndrome, depression, and post traumatic stress disorder.  AR at 119, 139.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 59-60, 63-70.  Plaintiff requested a hearing which took place on October 16, 2008.  AR at 612-40.  On November 4, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform unskilled sedentary jobs existing in significant numbers in the national economy such as an addresser, assembler and solderer.  AR at 11-25.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council.

Plaintiff subsequently filed an action challenging the Commissioner's decision.  Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010).  In July 2010, this Court issued an order reversing and remanding plaintiff's claim for further administrative proceedings to reassess plaintiff's claim at step three of the sequential evaluation process and to reconsider the medical opinions of plaintiff's treating doctor Chi Gan, M.D.  AR at 737-56.

In July 2010, the Appeals Council issued an order vacating the final decision of the Commissioner and remanding plaintiff's claim to an administrative law judge.  AR at 733-36.  In doing so, the Appeals Council associated plaintiff's subsequent claims for DIB and SSI, finding that the remand order rendered these claims duplicative.  AR at 735.

Plaintiff was 41 years old at the time of his second administrative hearing in December 2010.  AR at 997-1055.  On August 11, 2011, the ALJ issued a second decision finding

REPORT AND RECOMMENDATION - 2

1   plaintiff not disabled and denied benefits based on the finding that plaintiff could perform jobs

2   existing in significant numbers in the national economy such as mail clerk, small product

3   assembler, and marker.  AR at 697-722.  Plaintiff's administrative appeal of the second ALJ's

4   decision was denied by the Appeals Council, AR at 641-44, making the ALJ's ruling the "final

5   decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On February 10,

6   2014, plaintiff timely filed an action challenging the Commissioner's decision.  Dkt. No. 1.

7

8                                   II.      JURISDICTION

9          Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

10   405(g) and 1383(c)(3).

11                               III.      STANDARD OF REVIEW

12          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

13   social security benefits when the ALJ's findings are based on legal error or not supported by

14   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

15   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

16   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

17   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

18   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

19   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

20   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

21   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

22   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

23   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

24   must be upheld.  *Id.*

1    The Court may direct an award of benefits where "the record has been fully developed

2    and further administrative proceedings would serve no useful purpose." *McCartey v.*

3    *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

4    (9th Cir. 1996)).  The Court may find that this occurs when:

5        (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
         claimant's evidence; (2) there are no outstanding issues that must be resolved
6        before a determination of disability can be made; and (3) it is clear from the
         record that the ALJ would be required to find the claimant disabled if he
7        considered the claimant's evidence.

8    *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

9    erroneously rejected evidence may be credited when all three elements are met).

10                    IV.    EVALUATING DISABILITY

11           As the claimant, Mr. Al-Mirzah bears the burden of proving that he is disabled within

12   the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

13   Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

14   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

15   expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

16   423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

17   of such severity that he is unable to do his previous work, and cannot, considering his age,

18   education, and work experience, engage in any other substantial gainful activity existing in the

19   national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

20   99 (9th Cir. 1999).

21           The Commissioner has established a five step sequential evaluation process for

22   determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

23   404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

24   step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

REPORT AND RECOMMENDATION - 4

any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 5

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.   DECISION BELOW

On August 11, 2011, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

2.    The claimant has not engaged in substantial gainful activity since November 18, 2001, the alleged onset date.

3.    The claimant has the following severe impairments: degenerative disc disease; disc protrusion; esophageal dysmotility; irritable bowel syndrome (IBS); obstructive sleep apnea; hypertension; depression; and anxiety.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  He can lift/carry 20 pounds occasionally and 10 pounds frequently.  He can sit/stand/walk (with normal breaks) 6 hours in an 8-hour workday.  He can push/pull unlimitedly within those exertional limitations with hand/foot controls.  He can occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  He can occasionally balance, stoop, kneel, crouch, and crawl throughout the course of a workday.  He has no manipulative, visual, and communicative limitations.  He is to avoid concentrated exposure to vibration and hazards, such as machinery and heights.  He can understand, remember and carry out simple 1-2 step instructions.  He can perform required job tasks classified at level of SVP1 or SVP2 or unskilled work.  He would have the average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence, and pace in an ordinary work setting) on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence.  He can make judgments on simple work-related decisions.  He can respond appropriately to supervisors, co-workers[,] and [] deal with changes all within a stable work environment.  He should not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process.  Incidental contact with the general public is not precluded.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born on XXXXX, 1969 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2001, through the date of this decision.

AR at 703-22.

## VI.      ISSUES ON APPEAL

As raised in plaintiff's Opening Brief, the principal issues on appeal are:

1.      Whether the ALJ erred in failing to comply with this Court's Order regarding whether plaintiff's impairments equal a Listing?

2.      Whether the ALJ erred in failing to comply with this Court's Order regarding the evaluation of the medical opinions of plaintiff's treating physician?

3.      Whether the ALJ erred in assessing plaintiff's credibility?

4.      Whether the ALJ erred in failing to resolve conflicts between the Residual Functional Capacity finding and the medical evidence, thereby erring at Step Five by relying on the Vocational Expert's response to an invalid hypothetical and ignoring the Vocational Expert's testimony regarding the effect of concentration impairments on the ability to work?

Dkt. No. 20 at 1-2.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

1

VII.   DISCUSSION

2

A.   The ALJ's Step Three Determination

3

Plaintiff argues that the ALJ failed to follow this Court's 2010 order to consider

4

whether the combined effects of plaintiff's physical and mental impairments medically equal

5

the severity of an impairment described in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the

6

"Listings").  Dkt. 20 at 2-4; *See* 20 C.F.R §§ 404.1520(d), 416.920(d); *Tackett*, 180 F.3d at

7

1098.  Specifically, plaintiff argues that the ALJ erred by failing to consider whether the

8

effects of plaintiff's physical impairments, when combined with the effects of plaintiff's

9

mental impairments, satisfied the paragraph B criteria of Listings 12.04 and 12.06.  Dkt. 20 at

10

2-4; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A.[3]

11

This Court agrees.  An ALJ must comply with a district court's remand order.  *Sullivan*

12

*v. Hudson*, 490 U.S. 877, 885–86 (1989) ("Deviation from the [district] court's remand order

13

in the subsequent administrative proceedings is itself legal error.").  This error is significant

14

because the ALJ's failure to follow this Court's order prevented meaningful development of

15

the record regarding whether the combination of plaintiff's impairments medically equaled the

16

severity of a listing.

17

In 2010, this Court determined that the 2008 ALJ decision "improperly 'fragmentized'

18

[plaintiff's] impairments" in evaluating plaintiff's functional limitations for purposes of

19

determining whether the combination of plaintiff's physical and mental impairments medically

20

equaled the severity of a mental listing.  Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010);

21

AR at 741-44.  In so finding, the Court observed that the ALJ considered only plaintiff's

22

mental impairments in determining whether the paragraph B criteria of Listings 12.04 and

23

24

---

[3]The paragraph B criteria is "a set of impairment- related functional limitations"
particular to the assessment of mental impairments; they "represent functional areas deemed
essential to work."  20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A

1    12.06 were medically equaled.  Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010); AR at

2    743-44 (citing *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995)).  In *Lester*, the Ninth Circuit

3    found "that the Commissioner is required to take into account the combined effect of a

4    claimant's physical and mental impairments in determining whether his condition equals a

5    listing."  81 F.3d at 828.  The Ninth Circuit concluded that the ALJ erred by "isolating the

6    effects of [the claimant's] physical impairment from the effects of his mental impairment" and

7    by failing to consider the functional limitations related to the claimant's pain and depression

8    because they did not arise solely from his mental impairments.  *Id*. at 829-30.

9         A review of the Commissioner's second decision in this claim reveals that the ALJ

10   again "improperly fragmentized" the functional limitations arising from plaintiff's physical

11   impairments from the functional limitations arising from plaintiff's mental impairments.  *See*

12   AR at 704-06.  Although the ALJ claims to consider the combination of plaintiff's impairments

13   in assessing whether a listing is equaled, a close reading of the ALJ decision reveals that this

14   analysis was not conducted.

15        As in 2008, the ALJ's 2011 assessment of the paragraph B criteria for Listings 12.04

16   and 12.06 makes no mention, in form or in substance, of any impairment-related functional

17   limitations arising from plaintiff's physical impairments, including pain.  Discussing the legal

18   standard for analysis of the paragraph B criteria, the ALJ wrote: "To satisfy the 'paragraph B'

19   criteria, the *mental* impairments must result in at least two of the following: marked restriction

20   of activities of daily living; marked difficulty in maintaining social functioning; marked

21   difficulties in maintaining concentration, persistence or pace; or repeated episodes of

22   decompensation, each of extended duration."  *See* AR at 704 (emphasis added).  In concluding

23   that the paragraph B criteria are not met, the ALJ wrote: "Because [plaintiff's] *mental*

24   impairments do not cause at least two 'marked' limitations or one 'marked limitation' and

REPORT AND RECOMMENDATION - 9

1 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria

2 are not met." AR at 706 (emphasis added). This language suggests that the ALJ again failed

3 to consider the impact of plaintiff's physical impairments.

4      Although the ALJ's 2011 decision included an expanded discussion of the evidence

5 relevant to the paragraph B criteria, this discussion focuses solely on plaintiff's mental

6 impairments and fails to include any limitations arising from plaintiff's physical impairments.

7 *See* AR at 704-06. As such, the ALJ again failed to provide a meaningful analysis of whether

8 the combination of plaintiff's physical and mental impairments medically equals Listings 12.04

9 and 12.06. On remand, the ALJ should fully and fairly develop and evaluate the evidence

10 regarding whether or not the combination of plaintiff's physical and mental impairments

11 medically equal a Listing.

12      B.    <u>The ALJ's Assessment of the Medical Evidence</u>

13      Plaintiff also argues that the ALJ erred by failing to follow this Court's order to

14 reassess five of the medical opinions rendered by plaintiff's treating physician Chi Gan, M.D.

15 Dkt. 20 at 4-6. Specifically, plaintiff argues that the Commissioner erred by offering the same

16 rational previously rejected by this court to disregard Dr. Gan's opinions. This Court agrees in

17 part and disagrees in part.

18      In 2008, the ALJ rejected five of Dr. Gan's opinions because "these opinions were

19 rendered on check box forms that do not contain a significant explanation of the basis for the

20 limitations opinied." AR at 23. In 2010, this Court determined that this reason was not

21 supported by substantial evidence. Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010); AR

22 at 745-46. The Court reasoned that Dr. Gan had explained his opinion by describing his

23 treatment of plaintiff and plaintiff's response to it, providing examination results, and assessing

24 the degree of functional limitation caused by each diagnosis. Case No. 2:09cv-1671-JLR-BAT

1   (W.D. Wash. 2010); AR at 746.  Dr. Gan also offered an opinion regarding the estimated

2   duration of plaintiff's limitations and additional treatment to improve plaintiff's employability.

3   Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010); AR at 746.  Because Dr. Gan provided

4   explanations for his opinions, this Court concluded the ALJ erred in rejecting them for this

5   reason.  Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010); AR at 746.

6          Following remand and a second hearing, the ALJ offered four reasons to reject Dr.

7   Gan's opinions: (1) "they are not supported by the claimant's treating record"; (2) "the

8   opinions were rendered without much explanation"; (3) the "opinions appear to contain

9   inconsistencies"; and (4) "Dr. Gan did not have the benefit of reviewing the other medical

10  reports contained in the current record."  AR at 717-19.  Plaintiff argues that the first two

11  reasons offered by the ALJ are legally insufficient because they were previously rejected by

12  this Court.  Dkt. 20 at 4-5.  This Court agrees.

13         The first and second reasons offered by the ALJ, that Dr. Gan's opinions were rendered

14  without explanation or evidentiary support, have already been rejected by this Court.  *See* Case

15  No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010); AR at 746.  As discussed previously, this

16  Court determined that Dr. Gan's five opinions were supported by explanation and substantial

17  evidence including a description of plaintiff's treatment and plaintiff's response to it, a

18  description of plaintiff's examination results, an assessment of plaintiff's functional

19  limitations, and opinions regarding plaintiff's prognosis and future treatment modalities.  *See*

20  Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010); AR at 746.  Because this Court already

21  determined Dr. Gan provided explanations for his opinions, the ALJ's rejection of Dr. Gan's

22  opinion on this basis is an error.  *See Ischay v. Barnhart*, 383 F.Supp.2d 1199, 1214

23  (C.D.Cal.2005) (rule of mandate doctrine, a variant of the law of the case doctrine, holds that

24

1   the decision of an appellate court on a legal issue must be followed in all subsequent

2   proceedings in the same case).

3            Additionally, even if the ALJ's assertion that Dr. Gan's opinions are not supported by

4   the "treating record" offers a rational distinct from that which has already been rejected by this

5   Court, this rationale is nonetheless legally insufficient.  It is improper for an ALJ to reject the

6   opinion of a treating physician by merely stating that there is a lack of record support for that

7   opinion.  *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("ALJ must do more

8   than offer his conclusions. He must set forth his own interpretations and explain why they,

9   rather than the doctor's, are correct").  Here, the ALJ offered no explanation as to why Dr.

10  Gan's opinions are not supported by the treatment record.  As such, the ALJ's reliance on this

11  reason to reject Dr. Gan's opinion is also an error.

12           The Court now turns to an analysis of the two remaining reasons offered by the ALJ to

13  reject Dr. Gan's opinion.  As a matter of law, more weight is given to a treating physician's

14  opinion than to that of a non-treating physician because a treating physician "is employed to

15  cure and has a greater opportunity to know and observe the patient as an individual."

16  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625,

17  631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as

18  to either a physical condition or the ultimate issue of disability, and can be rejected, whether or

19  not that opinion is contradicted.  *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of

20  a treating or examining physician, the ALJ must give clear and convincing reasons for doing so

21  if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.

22  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a

23  detailed and thorough summary of the facts and conflicting clinical evidence, stating his

24  interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The

REPORT AND RECOMMENDATION - 12

ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctor's, are correct."  *Id.* (citing *Embrey*, 849 F.2d at 421-22).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester*, 81 F.3d at 830.  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

As a threshold matter, plaintiff argues that the ALJ was required by the remand order to provide clear and convincing reasons supported by substantial evidence to reject Dr. Gan's opinions.  Dkt. 20 at 4.  However, because Dr. Gan's medical opinions are contradicted by Dr. Becker, the ALJ was required only to offer specific and legitimate reasons supported by substantial evidence to properly reject Dr. Gan's opinion.  *See Reddick*, 157 F.3d at 725.

Turning once again to the substance of the ALJ's decision, the final reason offered by the ALJ to reject Dr. Gan's opinions, that "Dr. Gan did not have the benefit of reviewing the other medical reports contained in the current record" is not a specific and legitimate reason. It is important to note that the ALJ provides no discussion of why these later reports might render Dr. Gan's opinion invalid. This rationale, taken to its logical extreme, would allow for the rejection of any and all medical opinions rendered prior to the admission of the claimant's most recent treatment notes into the administrative record.

In contrast to the previously discussed reasons, the third reason offered by the ALJ, that Dr. Gan's opinions appear to contain inconsistencies is a specific and legitimate reason supported by substantial evidence. Discrepancies between a medical source's functional assessment and that source's clinical notes, recorded observations and other comments regarding a claimants capabilities "is a clear and convincing reason for not relying" on the assessment. *Bayliss*, 427 F.3d at 1216; *see also Weetman v. Sullivan*, 877 F.2d at 23. Plaintiff does not address these discrepancies in his brief.

Discussing these discrepancies, the ALJ observed that Dr. Gan "performed five physical evaluations of [plaintiff] … and opined that [plaintiff] was severely limited" in the performance of "any work between 2004 and 2005 and limited to sedentary work between 2006 and 2007." AR at 710. In contrast, the ALJ observed that Dr. Gan also concluded in January 2006 that plaintiff was "able to undertake light work, such as sitting type of work with no lifting in excess of 20 lbs. or repetitive bending of his back." AR at 710 (citing AR at 392). The lifting limitation opined by Dr. Gan in January 2006, that plaintiff could lift no more than 20 pounds, is inconsistent with Dr. Gan's prior opinion that plaintiff could lift less than two pounds and inconsistent with his subsequent opinions that plaintiff could lift no more than ten pounds. *Compare* AR at 392 (capable of lifting nor more than 20 pounds) *with* AR at 350

1    (capable of lifting no more than ten pounds), 390 (capable of lifting no more than ten pounds),

2    400 (unable to lift at least 2 pounds or unable to stand and/or walk), 412 (unable to lift at least

3    2 pounds or unable to stand and/or walk).  These inconsistencies are a specific and legitimate

4    reason supported by substantial evidence sufficient to reject Dr. Gan's medical opinion.  *See*

5    *Bayliss*, 427 F.3d at 1216.

6        Moreover, although plaintiff does not raise this issue in his brief, this Court notes that

7    in addition to the five medical opinions discussed above, there is a sixth opinion rendered by

8    Dr. Gan in the record.  This opinion was written in March 2008.  In this letter, Dr. Gan opines

9    plaintiff is unable to do work that requires lifting more than 20 pounds or requires repetitive

10   bending.  AR at 711.  Dr. Gan further opines that plaintiff is "unable to stand longer than 15

11   minutes at a time and he should be allowed to sit or even lie down periodically during an 8-

12   hour work day..." AR at 153.  In 2008, the ALJ rejected this opinion because this opinion

13   contained "no reference to objective signs or findings and no explanation of the basis for the

14   assessed limitations."  AR at 23.  This rejection was later affirmed by this Court.  Case No.

15   2:09cv-1671-JLR-BAT (W.D. Wash. 2010); AR at 746 (citing *Thomas*, 278 F.3d at 957 ("ALJ

16   need not accept the opinion of any physician, including a treating physician, if that opinion is

17   brief, conclusory and inadequately supported by clinical findings")).  This too is the law of the

18   case.  *See United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir.2010) (the decision of an

19   appellate court on a legal issue must be followed in all subsequent proceedings in the same

20   case).  In conclusion, the ALJ did not err in his assessment of the opinions of Dr. Gan.

21        C.    The ALJ's Evaluation of Plaintiff's Residual Functional Capacity

22        Plaintiff also argues the ALJ erred by failing to fully account for the medical opinions

23   of Renee Eisenhauer, Ph.D., Kathleen S. Mayers, M.D., Andy Sands, M.D., David Sandvik,

24   M.D., and David Widlan, Ph.D.,  regarding plaintiff's moderate mental limitations in

REPORT AND RECOMMENDATION - 15

1    attendance, concentration, task persistence, or pace in the RFC finding.[4]  Dkt. 20 at 10-16.

2    Plaintiff argues this error is significant because the ALJ based his step five finding on an

3    incomplete vocational hypothetical that was not supported by the weight of the medical

4    evidence.  In contrast, defendant argues that the ALJ properly accounted for all of these

5    opinions limiting plaintiff to simple one-to-two step instructions and finding plaintiff could

6    perform jobs requiring specific vocational preparation (SVP) levels one and two or simple

7    work.[5]   Dkt. 24 at 12-17.

8          The "RFC is an assessment of an individual's ability to do sustained work-related

9    physical and mental activities in a work setting on a regular and continuing basis.  A 'regular

10   and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

11   SSR 96-8p at 1.  The RFC assessment must be based on all of the relevant evidence in the case

12   record, such as:  medical history; the effects of treatment, including limitations or restrictions

13   imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily

14   activities; lay activities; recorded observations; medical source statements; effects of

15   symptoms, including pain, that are reasonably attributed to a medically determinable

16   impairment; evidence from work attempts; need for structured living environment; and work

17   evaluations.  SSR 96-8p.

18   _____

19        [4] Although this Court previously affirmed the ALJ's assessment of the medical
     opinions of Drs. Sandvik and Eisenhauer, *see* AR at 747-49, following remand in 2011, the

20   ALJ reassessed these opinions.  Case No. 2:09cv-1671-JLR-BAT (W.D. Wash. 2010); *See* AR
     at 714.   The ALJ's 2011 decision provided a different rationale to reject the medical opinion

21   of Dr. Sandvik and no rationale to reject the medical opinion of Dr. Eisenhauer.  AR at 714,
     717.

22        [5] As described in the Dictionary of Occupational Titles, specific vocational preparation
     ("SVP") "is the amount of lapsed time required by a typical worker to learn the techniques,

23   acquire the information, and develop the facility needed for average performance in a specific"
     job.  Dep't of Labor, Dictionary of Occupational Titles, Appendix C. (rev. 4th ed. 1991).  SVP

24   level one requires "short demonstration only" and level two requires "anything beyond short
     demonstration up to and including 1 month."

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey*, 849 F.2d at 422. Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Embrey*, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff relies on the court's analysis in *Brink v. Comm'r. Soc. Sec. Admin*, 343 Fed. Appx. 211 (9th Cir. 2009) to support his argument that the ALJ's RFC findings does not appropriately encompass all of the functional limitations assessed by plaintiff's examining and non-examining doctors. Dkt. 20 at 15-16. In *Brinks*, the court found that the ALJ erred by limiting the claimant to simple repetitive work when the accepted medical evidence also showed the claimant had moderate difficulty maintaining concentration, persistence, and pace. *Brinks*, 343 Fed. Appx. 211 at 212. In finding this error, the Court noted that the administrative record evinced that the ALJ did not equate "simple, repetitive work" with work requiring concentration, persistence, or pace. *Id*. The court in *Brinks* distinguished *Stubbs-Danielson*, 539 F.3d 1169, 1173-75 (9th Cir. 2008), the case relied on by the Commissioner, by noting that the medical testimony in *Stubbs-Danielson* did not establish any concrete limitations in concentration, persistence, or pace. *Brinks*, 343 Fed. Appx. 211 at 212. Such is not the case here. Here, the medical record supports that plaintiff was able to perform simple work tasks despite medically documented deficits in concentration, persistence or pace. A summary of the relevant medical evidence follows.

In 2004, Dr. Sands performed a psychiatric evaluation and noted plaintiff "appears to have trouble concentrating somewhat on formal mental status testing… His stress tolerance is very poor." AR at 459. Dr. Sands offers no opinion on plaintiff's ability to persist at simple work related activities.

In 2004, Dr. Eisenhauer reviewed plaintiff's medical records and noted that plaintiff had moderate limitations in the ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with others without being distracted by them; get along with coworkers or peers without distracting them; and complete a normal workday and workweek and perform at a consistent pace. AR at 569-70. Despite these limitations, Dr. Eisenhauer concluded that plaintiff's "cognitive functioning is adequate for carrying out simple and repetitive one and two step tasks reliably." AR at 572 (also noting plaintiff's "ongoing depression and generalized anxiety reduce his extended concentration and tolerance of work stress but not to the extent of completely inhibiting him from carrying out simple one or two step instructions within an average work schedule and workweek. The symptoms are not expected to impose greater than moderate limitations as he shows intact functioning in his [activities of daily living]…"). Dr. Eisenhauer further opined it would be better if plaintiff did not work closely with the public or coworkers. AR at 572.

In 2006, Dr. Sandvik performed a psychiatric evaluation and noted that despite plaintiff's poor performance on mental status testing, plaintiff appeared to be able to reason, understand and remember. AR at 447. Dr. Sandvik related plaintiff's poor performance on mental status testing to plaintiff's poor interpersonal skills, including an attitude of minimal

cooperation and irritability.  AR at 447.  Dr. Sandvik opined "that it would be very difficult for [plaintiff] to perform work activities through a normal work day at present."  AR at 447.

Following a second records review in 2006, Dr. Eisenhauer opined plaintiff still had moderate limitations in various areas of work related functioning including the ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods of time; and complete a normal workday and workweek and perform at a consistent pace.  *See* AR at 541-42.  Even with these limitations, Dr. Eisenhauer again concluded plaintiff retained the ability to "perform simple tasks within a schedule the majority of the time" but would have difficulty with complex and detailed work due to problems with labile mood and concentration.  AR at 543; *accord* AR at 560.

In 2010, Dr. Widlan performed a psychological evaluation and observed plaintiff experienced moderate concentration deficits that were evident on mental status examination and struggled with focus and pace when performing more complex exercises.  AR at 879.  Dr. Widlan opined plaintiff "likely takes longer than an average functioning individual to complete [activities of daily living] due to his level of depression."  AR at 879.   Dr. Widlan nonetheless noted plaintiff was able to perform simple, repetitive commands and was cognitively capable of accepting instructions from a supervisor for simple, repetitive tasks.  AR at 880.  Dr. Widlan, like Dr. Eisenhauer, noted plaintiff would struggle with moderately complex tasks.  AR at 880.

In 2011, Dr. Mayers performed a psychological evaluation and noted plaintiff's concentration was fair to poor.  AR at 850.  Despite these limitations, Dr. Mayers noted that plaintiff's performance on the metal status examination indicates he is able to understand, remember and carry out two-stage instructions.  AR at 850.

As plaintiff observes, these doctors opined plaintiff had moderate limitations in concentration, persistence, and pace.  However, Drs. Eisenhaur and Widlan also opined that despite these moderate limitations, plaintiff was capable of performing simple work related activities.  *See* AR at 543, 560, 572, 880.  These opinions are consistent with the ALJ's RFC finding and consistent with the Commissioner's position that the ALJ adequately accounted for plaintiff's moderate limitations in concentration, persistence, and pace in the RFC.  *See Stubbs-Danielson*, 539 F.3d at 1174 ("an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony"); *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where psychologist identified claimant as having deficiencies of concentration, persistence or pace, and opined that claimant had ability to sustain sufficient concentration and attention to perform at least simple, repetitive and routine cognitive activity, hypothetical question, which included ability to perform simple, routine and repetitive tasks, adequately captured claimant's deficiencies in concentration, persistence or pace).

Of the remaining doctors who opined plaintiff had moderate limitations, Dr. Mayers indicated that even with impaired concentration plaintiff was able to understand, remember, and carry out simple instructions.  AR at 850.  This opinion is also consistent with the ALJ's RFC finding.  Dr. Sands documented plaintiff's moderate difficulties in concentration, persistence, or pace but did not identify any concrete functional limitations associated with these symptoms.  *See* AR at 459.  This finding does not conflict with the ALJ's RFC determination because it does not include any concrete limitations not accounted for by the ALJ.

Indeed, only one doctor, Dr. Sandvik, provided an opinion that includes a functional limitation that is arguably inconsistent with the ALJ's RFC.  Dr. Sandvik opined plaintiff

1  would have difficulty performing work activities through a normal work day.  AR at 447.

2  Although this limitation could be attributed to difficulties in concentration, persistence, and

3  pace, it is clear from Dr. Sandvik's opinion that he attributed plaintiff's limitations in

4  completing a normal work day to plaintiff's poor interpersonal skills and not plaintiff's

5  concentration deficits.  *See* AR at 447.  Because the RFC finding also includes a limitation on

6  plaintiff's contact with the general public and because plaintiff raises no issue with the social

7  limitations included by the ALJ in the RFC finding, this Court finds no reason to disturb the

8  ALJ's RFC assessment on this basis.[6]

9        Here, as in *Stubbs-Danielson*, the ALJ explained the omission of plaintiff's moderate

10  concentration, persistence or pace deficiencies from the RFC finding by referencing Dr.

11  Eisenhauer's opinion that despite having moderate limitations in various areas of functioning

12  related to concentration, persistence or pace, plaintiff's "cognitive functioning is adequate for

13  carrying out simple and repetitive one and two step tasks reliably."  AR at 572; *see also* AR at

14  541-42, 569-70.  For this reason, the ALJ's RFC finding is consistent with the accepted

15  medical evidence of record.  As discussed previously, all of the concrete functional limitations

16  identified by the examining and non-examining doctors are reasonably accounted for in the

17  RFC finding.  As such, this Court finds no reason to disturb the ALJ's assessment of this

18  evidence.

19

20  _____

21        [6] This Court notes that at least two of the jobs, small product assembler and marker,
    relied on by the ALJ to find plaintiff not disabled at step five of the sequential evaluation

22  process are occupations that require the ability to work with things, not people.  *See e.g.* DOT
    706.684-022, Assembler, Small Products I, 1991 WL 679050 (indicating that taking

23  instructions and helping people are not a significant aspect of this occupation and that talking
    does not exist in this occupation), 209.587-034, Marker, 19991 WL 671802 (indicating that

24  taking instructions and helping people are not a significant aspect of this occupation and that
    talking does not exist in this occupation).

REPORT AND RECOMMENDATION - 21

1    To the extent that plaintiff raises additional errors with ALJ's assessment of the

2    medical opinions of Drs. Sands, Sandvik, and Widlan, this Court finds no reason to disturb the

3    ALJ's analysis.  *See* Dkt. 20 at 12 ("While vaguely indicating some level of rejection based

4    upon the physicians' failure to review the entire record, the ALJ consistently fails to

5    incorporate the physicians' conclusions regarding [plaintiff's] impairments, and fails to explain

6    this discrepancy….").  As noted above, the medical opinions of these doctors are reasonably

7    consistent with the ALJ's RFC determination and step-five findings.  An ALJ's findings need

8    only be consistent with a doctor's opined limitations, not identical to them.  *See Turner v.*

9    *Comm'r of the Soc. Sec. Admin.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (finding the ALJ did

10   not need to provide any reason for rejecting the opinion of a treating source because the ALJ

11   incorporated that source's observations in the RFC finding).  For these reasons, this Court finds

12   no error in the ALJ's assessment of the medical opinions of Drs. Eisenhauer, Mayers, Sands,

13   Sandvik, and Widlan.

14        D.     <u>The ALJ's Assessment of Plaintiff's Credibility</u>

15   Plaintiff also argues the ALJ erred in his assessment of plaintiff's credibility.  Dkt. 20

16   at 6-9.  Here, the ALJ provided five reasons to reject plaintiff's testimony:  (1) plaintiff's

17   appearance and demeanor while testifying at the hearing was "generally unpersuasive"; (2)

18   plaintiff engaged in work activities after the alleged disability onset date, indicating a higher

19   level of daily activities than generally reported by plaintiff; (3) plaintiff made less than

20   maximal effort on during the psychological evaluation conducted by Dr. Mayers and misled

21   Dr. Mayers regarding his ability to communicate in English; (4) plaintiff stopped working in

22   2001 for non-disability related reasons; and (5) plaintiff received only routine conservative

23   treatment for his impairments.  AR at 717-19.  In doing so, the ALJ provided clear and

24

convincing reasons supported by substantial evidence to reject plaintiff's testimony.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

1    Here, the ALJ offered several clear and convincing reasons supported by substantial

2    evidence to find plaintiff's testimony not credible.  *See Smolen*, 80 F.3d at 1284.  For example,

3    the ALJ observed plaintiff received only routine conservative treatment for his impairments.

4    AR at 718-19.  Plaintiff does not dispute this characterization of the evidence; rather, plaintiff

5    argues that this rationale is insufficient to reject his testimony.  Dkt. 20 at 9.  This Court

6    disagrees.  Obtaining only routine conservative treatment is a clear and convincing reason to

7    discredit a claimant's symptom testimony.  *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th

8    Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be

9    suggestive of lower level of pain and functional limitation than the claimant alleged).

10    The ALJ also discussed plaintiff's employment activity after the alleged disability onset

11    date.  AR at 718.  In doing so, the ALJ noted plaintiff "described some work activities that are

12    not limited to the extent one would expect, given the complaints of disabling symptoms and

13    limitations."  AR at 718.  The Ninth Circuit has recognized "two grounds for using daily

14    activities to form the basis of an adverse credibility determination," first, they can "meet the

15    threshold for transferable work skills," and second, they can "contradict [a claimant's] other

16    testimony."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Here, the ALJ relied on the

17    latter basis.  For example, the ALJ noted that plaintiff worked as a contractor for the U.S.

18    Army teaching Arabic and Iraqi culture for approximately two months.  AR at 718.  In

19    contrast, plaintiff testified that he had isolated himself at home since the alleged onset date.

20    AR at 718, 1017-19.  The ALJ also noted that Plaintiff worked a limousine/Town Car driver

21    for approximately three months.  AR at 718.  Yet, plaintiff testified he was limited in his ability

22    to drive due to the side effects of his pain medication that included dizziness and drowsiness.

23    AR at 718, 1016, 1020-21.  These are clear and convincing reasons to reject plaintiff's

24    testimony.  *See Orn*, 495 F.3d at 639.

REPORT AND RECOMMENDATION - 24

1    Moreover, it is notable that plaintiff does not challenge the ALJ's characterization of

2    the conflict between plaintiff's statements and his work activities. *See* Dkt. 20 at 7-8. Instead,

3    plaintiff argues that the ALJ impermissibly discredited his testimony due to an apparent

4    misunderstanding over whether plaintiff drove a limousine or a Town Car during this period of

5    employment. *See* Dkt. 20 at 7-8. Plaintiff's characterization of the ALJ decision is

6    unpersuasive. The ALJ did not discredit plaintiff's testimony due to conflicting evidence about

7    the type of car plaintiff drove; rather, the ALJ discredited plaintiff's testimony because driving

8    any vehicle professionally contradicted plaintiff's other testimony regarding his limited ability

9    to drive. AR at 718.

10    The ALJ also discredited plaintiff's testimony because plaintiff stopped work in 2001,

11    the year of plaintiff's alleged disability onset, for non-disability related reasons. AR at 718.

12    Discussing plaintiff's reasons for leaving this work, the ALJ noted: "A reasonable inference,

13    therefore, is that the claimant's impairments might not prevent the performance of a job, since

14    it was being performed adequately at the time… he quit…" AR at 718. An ALJ may properly

15    discount a claimant's testimony in part because he left his job for reasons other than his alleged

16    impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff advocates

17    for a different interpretation of this evidence, however, when the evidence is susceptible to

18    more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

19    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

20    Plaintiff raises other issues with the ALJ's credibility analysis; however, that some of

21    the reasons for discrediting a claimant's testimony should properly be discounted does not

22    render the ALJ's determination invalid, as long as that determination is supported by

23    substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here the

24    ALJ offered three clear and convincing reasons supported by substantial evidence to reject

REPORT AND RECOMMENDATION - 25

plaintiff's testimony.   As such, the Court finds no reason to disturb the ALJ's credibility analysis.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings on the sole issue of whether the combination of plaintiff's mental and physical impairments medically equals the severity of a listed impairment.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 20, 2015**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 23, 2015**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 6th day of January, 2015.

_James P. Donohue_

_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 26